ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>RAFAEL COLÓN NÚÑEZ<br><br>Parte Peticionaria | TA2026CE00022 | *Certiorari,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: KIS2025G0025<br><br>Sala: 1108<br><br>Sobre:<br>Art. 133 (b) del Código Penal de 2012<br>(33 LPRA sec. 5194b) |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2026.

Compareció ante este Tribunal la parte peticionaria, el Sr. Rafael Colón Núñez (en adelante, el "señor Colón Núñez" o "Peticionario"), mediante recurso de *certiorari* presentado el 7 de enero de 2026. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 24 de noviembre de 2025, notificada y archivada en autos el día siguiente. A través del aludido dictamen, el TPI declaró "No Ha Lugar" la "**Moción Para Solicitar Desestimación al Amparo de la Regla 64 (P)**".

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *confirmamos* la *Resolución* recurrida.

**I.**

El caso de epígrafe tuvo su origen el 30 de julio de 2025, con la radicación de una "**Denuncia**" por parte del Ministerio Público en contra del señor Colón Núñez por alegadamente infringir el Artículo 133 (b) de la Ley Núm. 146 de 30 de julio de 2012, según enmendada, mejor conocida como "Código Penal de Puerto Rico de 2012", que tipifica el delito de actos

lascivos. 33 LPRA sec. 5194. En detalle, la referida "**Denuncia**" lee como sigue:

> EL REFERIDO IMPUTADO RAFAEL COL[Ó]N NUÑEZ, EN FECHA Y HORA ANTES INDICADAS, EN MIRAMAR, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE SAN JUAN, ILEGAL, VOLUNTARIA, A PROPOSITO, CON CONOCIMIENTO, SIN INTENTAR CONSUMAR EL DELITO DE AGRESIÓN SEXUAL, MEDIANTE EL USO DE FUERZA SOMETIÓ A ALEXANDER RAFAEL CORDOVÉS SERRANO A UN ACTO QUE TENDIÓ A DESPERTAR, EXCITAR O SATISFACER LA PASIÓN O DESEOS SEXUALES DEL IMPUTADO, CONSISTENTE EN QUE EL IMPUTADO LO AGARRÓ POR LA NUCA, LO BESÓ A LA FUERZA METIÉNDOLE SU LENGUA EN LA BOCA, POR ENCIMA DE LA ROPA LE ACARICIÓ LOS GLÚTEOS, CON DEDO FROTÓ SU ANO Y EJERCIÓ PRESIÓN.[1]

Ese mismo día, el Tribunal encontró causa para arresto por el delito previamente mencionado. El 9 de septiembre de 2025, se llevó a cabo la vista preliminar en contra del señor Colón Núñez. Allí, el foro primario determinó que existía causa probable para acusar al Peticionario. Así las cosas, el Ministerio Público presentó el correspondiente pliego acusatorio. Posteriormente, el 6 de octubre de 2025, el señor Colón Núñez presentó una "**Moción Para Solicitar Desestimación al Amparo de la Regla 64 (P)**" (en adelante, "Moción de Desestimación") mediante la cual sostuvo que no existe prueba suficiente en derecho para sostener el elemento de ausencia de consentimiento, indispensable para configurar el delito imputado. Asimismo, arguyó que la secuencia fáctica descrita por el Sr. Alexander Rafael Cordovés Serrano (en adelante, el "señor Cordovés Serrano") devela un acercamiento inicial voluntario, un intercambio verbal con matices de aceptación, ausencia de resistencia inequívoca y una tardanza injustificada en denunciar.

Señaló que el primer acto de aproximación provino del señor Cordovés Serrano, toda vez que este decidió voluntariamente compartir su número de teléfono. Alegó que, si el contacto inicial hubiera sido percibido como una agresión, lo natural habría sido que el perjudicado se alejara, pidiera ayuda o denunciara el hecho inmediatamente y no que siguiera voluntariamente al señor Colón Núñez hasta su apartamento. Agregó,

---

[1] *Véase*, SUMAC-TPI, Entrada Núm. 3.

además, que, si la conducta de la presunta víctima no comunica de manera clara la ausencia de consentimiento, no puede sostenerse el elemento esencial del tipo penal más allá de meras conjeturas. En vista de lo anterior, le peticionó al foro de instancia que declarara "Ha Lugar" su petición.

En respuesta a lo anterior, el 20 de noviembre de 2025, el Ministerio Público presentó su "**Oposición a Moción en Solicitud de Desestimación al Amparo de la Regla 64(P) de Procedimiento Criminal**" (en adelante, "Oposición") en la que expuso que el Peticionario no solo trajo argumentos tergiversados de cómo debe comportarse una víctima luego de ser sometida a unos actos lascivos en contra de su voluntad, sino que le imputó responsabilidad al perjudicado por su comportamiento deplorable. Enfatizó que no todas las personas reaccionan de la misma manera ante un evento traumático de índole sexual, puesto que no existe tal cosa como un manual de víctimas. Por último, precisó que el argumento de que la conducta del perjudicado generó una percepción razonable de consentimiento no tiene base ni fundamento alguno que lo sustente en derecho. En vista de lo anterior, le solicitó al Tribunal que declarara "No Ha Lugar" la *Moción de Desestimación* interpuesta por el señor Colón Núñez. Finalmente, tras evaluar ambos escritos, el 24 de noviembre de 2025, el foro de instancia dictó una *Resolución* declarando "No Ha Lugar" la referida solicitud.

Inconforme con lo anteriormente resuelto, el Peticionario acudió a este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

**Primer Señalamiento de Error: Erró el foro primario al aplicar indebidamente el estándar de la Regla 64(p), sustituyendo el análisis de "ausencia total de prueba" —sobre elementos específicos del delito imputado— por una conclusión general de "prueba suficiente", sin identificar qué evidencia mínima y admisible sostiene cada elemento esencial del Art. 133-B.**

**Segundo Señalamiento de Error: Erró el foro primario al validar como fundamento probatorio inferencias del Ministerio Público que reconfiguran cualitativamente el evento (agravándolo) sin que esa agravación surja del testimonio desfilado, incurriendo así en el defecto jurídico de sustituir evidencia por especulación, lo cual es incompatible con el estándar de "scintilla de evidencia de calidad y admisible" exigible incluso en vista preliminar.**

**Tercer Señalamiento de Error: Erró el foro primario al no analizar rigurosamente el elemento esencial del Art. 133-B relativo a que el acto imputado sea uno que "tienda a despertar, excitar o satisfacer los deseos sexuales del imputado", dando por satisfecho ese elemento por la mera existencia de un beso o contacto físico, sin exponer hechos objetivos que permitan inferir —aunque sea mínimamente— la intención lasciva requerida por el tipo penal. El propio marco doctrinal del delito de actos lascivos exige esa cualidad: el acto debe consistir en contacto u obligar a realizar actos "para excitar o satisfacer los deseos sexuales" del imputado.**

**Cuarto Señalamiento de Error: Erró el foro primario al tratar el "miedo" o la reacción subjetiva del perjudicado como sustituto automático del elemento de coerción o falta de consentimiento, sin articular el puente jurídico que conecta hechos probados con el umbral legal de compeler mediante fuerza o intimidación, según interpretado por la jurisprudencia sobre actos lascivos.**

El 30 de enero de 2026, el Estado presentó su "**Escrito en Cumplimiento de Orden**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

La Regla 23 de Procedimiento Criminal requiere la celebración de una vista preliminar en todos los casos de delito grave. 34 LPRA Ap. II, R. 23. Se trata, pues, de un paso que antecede la presentación de los cargos. Pueblo v. Figueroa *et al.*, 200 DPR 14, 21 (2018). El objetivo principal de esta Regla es evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal. Pueblo v. Rivera Vázquez, 177 DPR 868, 875 (2010). Así pues, permite evaluar tanto la validez del arresto como las probabilidades de que la persona sea culpable del delito que se le imputa. Íd. Cabe destacar que la naturaleza de esta vista es estatutaria y no de índole constitucional. Pueblo v. Martínez Hernández, 208 DPR 872, 881 (2022).

En esta etapa, le corresponde al Ministerio Público probar los elementos constitutivos de delito y su conexión con la persona imputada. Íd. La determinación judicial en la vista preliminar de que existe causa probable equivale a la autorización para acusar. Pueblo v. García Saldana, 151 DPR 783, 789 (2000). El Ministerio Público no está obligado a exhibir todas las

pruebas en su posesión, sino que puede emplear aquellas que considere suficientes para respaldar su argumento de que existe causa para acusar. Pueblo v. Rivera Vázquez, *supra*, pág. 876. Contra una decisión adversa en vista preliminar, el Ministerio Público tiene dos opciones, a saber: (1) desistir de procesar al acusado o (2) recurrir ante otro magistrado, ya sea presentando la misma evidencia o diferente, para que conduzca una segunda vista preliminar. Pueblo v. Figueroa *et al.*, *supra*, págs. 21-22. La vista preliminar en alzada implica una vista de *novo* y no una apelación de la vista preliminar inicial. Pueblo v. Rivera Vázquez, *supra*, pág. 877. De este modo, el Ministerio Público cuenta con una segunda oportunidad para obtener la autorización para acusar por el delito que considera que se ha configurado. Pueblo v. García Saldana, *supra*, pág. 790. En síntesis, sin este instrumento, el Ministerio Público carecería de recursos para impugnar las determinaciones adversas que no le satisfacen. Pueblo v. Ríos Alonso, 149 DPR 761, 769 (1999).

**B.**

La Regla 64 de las Reglas de Procedimiento Criminal de Puerto Rico regula lo relativo a las mociones de desestimación en los casos de índole penal. 34 LPR AP. II, R. 64. La misma proporciona un listado taxativo de los fundamentos por los cuales una acusación o denuncia puede ser desestimada. Dentro de estas razones se incluye la siguiente:

> Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho. 34 LPRA Ap. II, R. 64 (p).

Conforme a lo establecido por nuestro Tribunal Supremo, es posible invocar dos fundamentos para la desestimación de una acusación: (1) ausencia total de prueba o (2) que se le infringió al acusado alguno de los derechos procesales que deben ser garantizados en la vista. Pueblo v. Rivera, *supra*, pág. 878. Ambos argumentos demandan una demostración clara y detallada del error que se le atribuye al magistrado. Íd. En el segundo supuesto, el juez encargado de atender una moción bajo este fundamento tiene la obligación de evaluar si la vista preliminar se llevó a cabo conforme

a lo establecido en la Regla 23 de Procedimiento Criminal, *supra*, y si se le brindaron todas las garantías procesales correspondientes. Pueblo v. Rivera, *supra*, pág. 879.

En el caso Pueblo v. Rivera Cuevas, 181 DPR 699, 708-709 (2011), el Tribunal Supremo estableció que, para analizar una moción de desestimación al amparo de la precitada regla, se debe examinar la prueba desfilada en la vista preliminar y determinar si se estableció la probabilidad de que estén presentes cada uno de los elementos del delito y que el imputado lo cometió. Entonces, solo procederá desestimar la acusación ante la ausencia total de prueba sobre algún elemento del delito o la conexión del acusado en la vista que dio lugar a la presentación del pliego acusatorio. Pueblo v. Guadalupe Rivera, 206 DPR 616, 627 (2021). Es harto conocido que la prueba requerida en una vista preliminar "se limita a la presentación de una *scintilla* de evidencia que dé paso a una determinación *prima facie* sobre los dos aspectos mencionados". Pueblo v. Pérez Delgado, 211 DPR 654, 665 (2023); Pueblo v. Negrón Nazario, 191 DPR 720, 733-734 (2014).

Siendo así, al evaluar una moción de desestimación bajo la precitada Regla, se deben considerar los siguientes criterios, a saber:

> 1) examinar la prueba de cargo y defensa vertidas en la vista preliminar, así como la prueba del acusado en apoyo de la moción; (2) determinar si esa prueba establece la probabilidad de que estén presentes todos los elementos del delito, así como la existencia de prueba que conecte al imputado con su comisión; (3) el hecho de que a juicio del magistrado la prueba presentada demuestre con igual probabilidad la comisión de un delito distinto al imputado, no debe dar base a una desestimación; y (4) solo en ausencia total de prueba sobre la probabilidad de que estén presentes y probados uno o varios elementos del delito o de la conexión del imputado con tal delito, procede la desestimación de la acusación. Pueblo v. Pérez Delgado, *supra*, pág. 667.

## C.

Es norma sólidamente establecida en nuestra jurisdicción que no se favorece la intervención de los tribunales apelativos al momento de revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formulados por el Tribunal de Primera Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v.

Negrón Ramírez, 213 DPR 895 (2024); Pueblo v. Hernández Doble, 210 DPR 850, 864 (2022). Por tal razón, se les concede gran deferencia a las determinaciones de hechos realizadas por los juzgadores de instancia, así como a las adjudicaciones de credibilidad que estos hacen sobre los testigos que declaran ante ellos. Pueblo v. Negrón Ramírez, *supra*, pág. 18. Esto responde al hecho de que son el Juez y el Jurado los que están en mejor posición para aquilatar la prueba testifical al tener la oportunidad de oír, ver y apreciar el comportamiento de los testigos. Íd., pág. 16; Pueblo v. Hernández Doble, *supra*, pág. 864. Esto adquiere mayor relevancia cuando se trata de la prueba oral desfilada en el juicio. Pueblo v. Negrón Ramírez, *supra*, págs. 16-17. Además, "[e]l veredicto del Jurado, como la sentencia del [J]uez, es un acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia". Pueblo v. Figueroa Rosa, 112 DPR 154, 159 (1992).

Ahora bien, se ha reconocido que a pesar de la deferencia que merece la determinación apelada, la misma podría ser revocada si: (1) se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto o (2) si la prueba no concuerda con la realidad fáctica, es increíble o imposible. Pueblo v. Santiago, 176 DPR 133, 148 (2009). Es decir, los tribunales apelativos tienen la potestad de sustituir el criterio de los tribunales de instancia en aquellas ocasiones en que, "a la luz de la prueba admitida, no exista base suficiente que apoye su determinación". Pueblo v. Hernández Doble, *supra*, pág. 865.

Nuestro más alto foro ha definido pasión, perjuicio o parcialidad como "aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio". Pueblo v. Negrón Ramírez, *supra*, pág. 19. Por otro lado, han expresado que "las conclusiones del tribunal se considerarán claramente erróneas si un análisis de la totalidad de la evidencia recibida revela que las

conclusiones están en conflicto con el balance más racional, justiciero y jurídico". Pueblo v. Hernández Doble, *supra*, pág. 865.

**III.**

En el presente caso, el Peticionario nos solicitó la revocación de la *Resolución* del TPI en la que se declaró "No Ha Lugar" la *Moción de Desestimación.*

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, el señor Colón Núñez alega que el TPI erró: (1) aplicar indebidamente el estándar de la Regla 64 (p), *supra*, sustituyendo el análisis de "ausencia total de prueba" sobre elementos específicos del delito imputado por una conclusión general de "prueba suficiente"; (2) validar como fundamento probatorio inferencias del Ministerio Público que reconfiguran cualitativamente el evento; (3) no analizar rigurosamente el elemento esencial del Artículo 133 (b), *supra*, relativo a que el acto imputado sea uno que tienda a despertar, excitar o satisfacer los deseos sexuales del imputado; y (4) tratar el miedo o la reacción subjetiva del perjudicado como sustituto automático del elemento de coerción o falta de consentimiento. Veamos.

Del expediente ante nuestra consideración se desprende que el 30 de julio de 2025, el Ministerio Público presentó una "**Denuncia**" en contra del señor Colón Núñez por presuntamente violar el Artículo 133 (b) del Código Penal, *supra*. Tras varios trámites procesales, incluyendo la presentación del correspondiente pliego acusatorio, el 6 de octubre de 2025, el señor Colón Núñez presentó una *Moción de Desestimación* a través de la cual argumentó que no se presentó prueba suficiente en derecho para sostener que el señor Cordovés Serrano no consintió al aludido acto de carácter sexual. Igualmente, afirmó que los hechos descritos por el presunto perjudicado develan un acercamiento inicial voluntario, ausencia de resistencia y una demora injustificada en denunciar los actos. El 20 de noviembre de 2025, el Ministerio Público presentó su correspondiente

*Oposición.* Así las cosas, el 24 de noviembre de 2025, el TPI denegó dicha petición mediante *Resolución*.

Conforme adelantáramos en los acápites anteriores, la Regla 64 (p) de las de Procedimiento Criminal, *supra*, permite que una persona acusada de cometer un delito solicite la desestimación de la acusación instaurada en su perjuicio. En particular, el imputado puede solicitar el archivo de los cargos en su contra, bajo el fundamento de que hubo ausencia total de prueba en la vista o que se le infringieron alguno de los derechos procesales que deben ser garantizados en dicha audiencia.

Por su parte, y en lo concerniente al caso de autos, para que se configure el delito de actos lascivos, se debe demostrar –entre otros elementos– que el imputado o acusado sometió a otra persona a un acto que tiende a despertar, excitar o satisfacer la pasión o deseos del imputado. 33 LPRA sec. 5194. Además, como una de las circunstancias que el tipo penal contempla, es que se debe probar que la víctima fue compelida al acto mediante el empleo de fuerza, violencia, amenaza de grave o inmediato daño corporal, o intimidación, o el uso de medios hipnóticos, narcóticos, deprimentes o estimulantes o sustancias o medios similares. Íd.

Tras un análisis ponderado y detenido del expediente ante nuestra consideración, incluyendo la "**Denuncia**", la *Moción de Desestimación*, su correspondiente *Oposición* y la regrabación de la vista preliminar celebrada en el caso de autos, hemos arribado a la conclusión de que el TPI actuó correctamente al denegar la referida petición. Nos explicamos.

De la evidencia desfilada durante la vista preliminar se desprende que, el 28 de julio de 2025, cerca de las 10:00 p.m., el señor Cordovés Serrano se encontraba en su apartamento estudiando para la reválida de derecho. Al momento de disponerse a descansar, recordó que había dejado abierto el portón de acceso a su apartamento, por lo que salió con el propósito de cerrarlo. En ese instante, observó que el Peticionario se encontraba saliendo del elevador, por lo que se puso una camisa.

Conforme al testimonio del señor Cordovés Serrano, al notar que el señor Colón Núñez se detuvo frente a su apartamento, volvió a empujar el

portón para conversar con él. Durante dicho intercambio, el Peticionario comenzó a relatar aspectos de su vida personal, indicando que llevaba aproximadamente cuatro (4) años residiendo en el condominio, que trabajaba en Costco y que había padecido de cáncer. Asimismo, le expresó que había observado que el señor Cordovés Serrano permanecía con frecuencia dentro de su apartamento. Este último le aclaró que ello respondía a que se encontraba estudiando y le manifestó que estaba disponible para cualquier cosa que necesitara. Acto seguido, el señor Cordovés Serrano procedió a registrar su número telefónico en el celular del Peticionario.

Posteriormente, el señor Colón Núñez miró hacia el interior del apartamento del señor Cordovés Serrano, le preguntó por la ubicación de la cocina y comentó que el apartamento era distinto al suyo. Más adelante, el Peticionario abrió la puerta de su propio apartamento, gesto que el señor Cordovés Serrano interpretó como una invitación para observar el interior. Mientras el señor Cordovés Serrano permanecía en el umbral del de la puerta del apartamento del Peticionario, expresó que el apartamento se veía lindo. En ese momento, el señor Colón Núñez le respondió: "lindo estás tú", e inmediatamente lo sujetó por el cuello, le haló la cabeza y lo besó de manera violenta.

El señor Cordovés Serrano intentó resistir la conducta colocando su mano en el pecho del Peticionario y dándole palmadas para que lo soltara. No obstante, el Peticionario, sin liberar la sujeción del cuello, lo agarró por el glúteo derecho y comenzó a apretarlo. Aunque el señor Cordovés Serrano logró empujarlo y separarse, el Peticionario volvió a sujetarlo por el cuello, lo besó nuevamente introduciendo su lengua y utilizando uno de sus dedos, le frotó su área anal. El señor Cordovés Serrano testificó que, en ese momento, sintió temor y confusión, logró liberarse y se refugió en su apartamento, cerrando la puerta.

De este relato fáctico, el cual fue creído en su totalidad por el foro de instancia, se desprende de manera inequívoca el propósito consciente del señor Colón Núñez de someter al señor Cordovés Serrano a actos dirigidos

a despertar, excitar o satisfacer su pasión y/o deseos sexuales. Asimismo, resulta patente que dichos actos fueron ejecutados mediante el uso de fuerza física, violencia e intimidación, anulando la voluntad de la víctima y privándola de cualquier posibilidad real de consentimiento.

Esto es, la conducta desplegada por el Peticionario consistió en una secuencia continua de actos de naturaleza sexual, iniciados y reiterados sin consentimiento y sostenidos mediante contacto físico forzado, a pesar de los intentos explícitos del señor Cordovés Serrano por liberarse. Tal proceder devela no solo la intención lasciva requerida por el tipo penal, sino también una clara imposición de poder y control sobre el señor Cordovés Serrano. Además, el testimonio del señor Cordovés Serrano demuestra que el uso de la fuerza no fue incidental ni momentáneo, sino persistente, pues aun cuando logró separarse inicialmente, el Peticionario retomó la actuación lasciva. En consecuencia, a la luz de la prueba presentada en la vista preliminar y valorada en su totalidad, concurren todos los elementos constitutivos del delito de actos lascivos conforme dispone nuestro ordenamiento jurídico.

En fin, no hemos hallado indicador alguno que nos obligue a no concederle gran deferencia a las determinaciones de hechos realizadas por el juzgador de instancia, así como a las adjudicaciones de credibilidad que éste efectuó sobre el testimonio del señor Cordovés Serrano. Pueblo v. Negrón Ramírez, *supra*, pág. 18. Fue la juzgadora de hechos que tuvo la oportunidad de oír, ver y apreciar el comportamiento de dicho testigo. Íd., pág. 16. Tampoco surge del análisis de la prueba que hubiera mediado pasión, prejuicio o parcialidad o algún error manifiesto llevado a cabo por el TPI. Es decir, entendemos que, a la luz del testimonio creído por el *foro a quo*, no existe base suficiente que apoye la contención del señor Colón Núñez en su recurso, a los efectos de que el Ministerio Público no logró establecer que, a propósito, sometió al señor Cordovés Serrano a un acto que despertó, excitó o satisfizo su pasión o deseos sexuales. Más aún cuando el acto de aquilatar y apreciar la prueba está investido con "la alta dignidad de la magistratura en la función juzgadora de la conducta de los

hombres, y no es para echarse a un lado con liviandad e indiferencia". <u>Pueblo v. Figueroa Rosa</u>, *supra*, pág. 159.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* y *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones